**In re RAYLYN AG, INC., Debtor.**

**Bankruptcy No. 86–3345–W.**

United States Bankruptcy Court,
S.D. Iowa.

April 21, 1987.

**524**

C.R. Hannan, Council Bluffs, Iowa, for debtor.

Elizabeth Nelson, Des Moines, Iowa, Chapter 12 Trustee.

Steven H. Krohn, Council Bluffs, Iowa, for Federal Land Bank of Omaha and Federal Land Bank of Wichita.

Doug Quinn, Omaha, Neb., for Innk Land.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

This case comes before the Court on five issues raised by the pleadings filed. They are (in the order considered):

1. The Motion to Dismiss.
2. Motion to Modify Stay on the Iowa property.
3. Motion to Modify Stay on the Kansas property.
4. Motion to Allow Secured Borrowing.
5. Confirmation of the Chapter 12 Plan.

### ISSUE 1

■ The Federal Land Bank filed its Motion to Dismiss on March 25, 1987. The reason for the requested dismissal was that debtor had not filed its plan by March 23, 1987 (March 22 being a Sunday) same being was the 91st day after the filing of debtor's petition as mandated by Chapter 12 of the 1986 amendments. (Section 1221). The docket sheet reveals that debtor's plan was filed on March 24, 1987, and Federal Land Bank's Motion to Dismiss was filed on March 25, 1987. Thus the Court was faced with the question whether the failure of the debtor to file within ninety (90) days was jurisdictional, i.e., if not filed within ninety (90) days or less is debtor out of Court, or can a delay of one day be excused.

The Court concludes that such a failure is not jurisdictional and that since debtor filed on the 92nd day instead of the 91st day, one day before the filing of the Motion to Dismiss, debtor may still proceed under Chapter 12. The Court will not indulge in speculation as to the effect of a late filing after a Motion to Dismiss had already been filed. Whether right or not, the Court concludes that the time frames imposed by Congress were for the purpose of mitigating or eliminating improper delay on the part of debtors bent on using the new tool of Chapter 12 not as a good faith attempt to reorganize but as a delaying or stalling tactic. The fact that the plan was filed 92 days after the petition clearly negates such an intent on the part of the debtor. The Motion to Dismiss is OVERRULED.

### ISSUES 2 AND 3

■ In support of each of the two Motions to Modify Stay, the Land Bank introduced a copy of the promissory note, a copy of the real estate mortgage, and asked the Court to take judicial notice of its two proofs of claim for $598,848.90 on the Iowa land and $125,314.65 on the Kansas land. Finally to buttress its position that land values were declining so as to create the need for adequate protection not treated in debtor's plan, the Land Bank introduced a survey of Iowa Farm Land Values, prepared by the University of Iowa Extension Service, purporting to prove that Iowa farm land values were declining at the rate of 1% per month. Debtor objected to same. The Court, reasoning that if material from the University of Minnesota as to real estate values in Minnesota was quotable evidence in the *In re Ahlers* case, 794 F.2d 388, 392 n. 1 (8th Cir.1986) by the Eighth Circuit Court of Appeals, material from the University of Iowa on real estate values in Iowa was admissible evidence in the instant case, admitted the survey. The Land Bank then rested.

The Court overruled the two Motions. From the file, creditor was an undersecured creditor. Chapter 12 clearly mandates that neither lost opportunity nor benefit of the bargain adequate protection payments (c.f. *In re American Mariner*, 734 F.2d 426 (9th Cir.1984)) are to be awarded. Further, if there is a clearcut lesson to be derived from *Ahlers, Id.*, it is that adequate protection payments on real estate become operative only after the redemption period has expired and creditor would be in possession, a period of time as to which no

evidence was adduced by creditor, but as to which the Court concludes had not yet expired. Finally, *In re Briggs Transportation*, 780 F.2d 1339 (8th Cir.1985) sets up the guidelines that adequate protection is within the discretion of the Bankruptcy Court. The Court finds that adequate protection payments are not appropriate in this case. The two Motions are, therefore, OVERRULED.

### ISSUE 4

The Court ruled that debtor could seal 22,750 bushels of corn, buy P.I.K. certificates, redeem the corn by use of the certificates, sell the corn, and use the $5,000.00 gained by this Congressionally mandated form of money changing in the temple of the ASCS, for operating expenses. The Court finds that Council Bluffs Savings and Loan is a secured creditor on the corn (and its subsequent transformations) and that their lien should follow the base value of said personal property. Counsel for the debtor and secured creditor are to submit an agreed Order for said purpose.

### ISSUE 5

Upon consideration of Issue 5, the Court was unable to rule. On April 9, 1987, the objections of the Chapter 12 Trustee, creditor Firstier, and alleged creditor Innk Land were filed. Said objections were not scheduled for hearing. Although it would appear the objections of the Trustee and Firstier might be resolvable, the objections and the claim of Innk Land present a far different concern.

Debtor's schedules showed $955,000.00 in debts. Council Bluffs Savings and Loan (by the testimony of debtor's principal officer) was an oversecured creditor with a claim for an additional $35,000.00 in interest. This raised the scheduled debt to $990,000.00. Innk Land's claim was for $600,000.00 and if amended might exceed $800,000.00. It is based on a District of Colorado judgment against the two founders and former majority owners of debtor. If attributable to debtor, as claimed by creditor, then the debt owed exceeds $1,500,000.00 and is not 80% farm oriented.

No hearing on confirmation can proceed without a determination of the validity of this claim.

The Court, therefore, CONTINUED the confirmation hearing until the Honorable Lee Jackwig can schedule a hearing on the issues thus presented at the first possible opportunity.